# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANICQUA APONTE AND D.H.,<br>**Plaintiffs,** | CIVIL ACTION |
| **v.** | |
| POTTSTOWN SCHOOL DISTRICT,<br>**Defendants.** | NO. 18-3199 |

## MEMORANDUM OPINION

This case concerns a years-long dispute between *pro se* Plaintiff Shanicqua Aponte and Defendants—the Pottstown School District and various individuals employed by or affiliated with it—over the education of Plaintiff's minor, special-needs child, D.H. The dispute came to a head in early 2018 when Plaintiff initiated a due process hearing with Pennsylvania's Office for Dispute Resolution ("ODR"), complaining that the School District had failed to meet its obligations under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq*. ("IDEA") and Section 504 of the Rehabilitation Act of 1973, 19 U.S.C. § 794(a) ("Section 504"). The ODR's Hearing Officer ultimately denied Plaintiff's request for relief. Plaintiff now appeals that decision to this Court and, in addition, brings various other constitutional and common law claims. Defendants have filed motions to dismiss the Second Amended Complaint for failure to state a claim, which, for the reasons that follow, will be granted in part and denied in part.

## I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare"

recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555). In analyzing a motion to dismiss, legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210-11 (3d Cir. 2009).

## II. PROCEDURAL HISTORY

As discussed below, three threshold issues must be addressed before reaching the merits of Defendants' motions, for which a bit of procedural history will prove helpful. On July 27, 2018, Plaintiff initiated this action by filing a Complaint and a motion to proceed *in forma pauperis*. The Complaint raised various causes of action on behalf of both Plaintiff and D.H. On July 31, 2018, the Court granted Plaintiff's motion to proceed *in forma pauperis*, but in light of the Third Circuit's decision in *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991), informed Plaintiff that she "may not bring claims on behalf of her minor child because a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than herself." The Court gave Plaintiff sixty days to retain counsel "in the event she seeks to pursue claims on behalf of D.H.," and explained that if Plaintiff "would prefer to proceed only on her claims, she may notify the Court at any time before the sixty . . . day period expires."

On August 2, 2018, Plaintiff filed an Amended Complaint bringing claims on her own behalf only. In the Amended Complaint, Plaintiff asserted "claims"[1] for: (1) retaliation, pursuant

---

[1] The Amended Complaint intermingled the causes of action Plaintiff sought to recover upon (retaliation, assault, etc.) with the relief she sought to recover (compensatory damages, punitive damages, etc.).

to Section 504, (2) neglect, (3) punitive damages, (4) compensatory damages, (5) retaliation, (6) assault, (7) emotional distress, (8) "civil action for deprivation of rights," (9) "civil rights discrimination," (10) "violation [of] Fourteenth Amendment Due Process," and (11) "violation [of the] Privacy Act." Defendants moved to dismiss the Amended Complaint for failing to state a claim, and on January 7, 2019, following a hearing held with the parties, the Court granted Defendants motions, dismissing the Amended Complaint without prejudice.

Plaintiff then filed her Second Amended Complaint on January 31, 2019, again bringing claims on her behalf only. The Second Amended Complaint does not set out specific causes of action; instead, it states that "[a]ll claims and damages for claims from original/initial complaint are the same and to be added to this amended complaint." Plaintiff also attached several exhibits to the Second Amended Complaint, including a copy of the ODR Hearing Officer's decision on Plaintiff's due process petition. Defendants moved again to dismiss the Second Amended Complaint for failing to state a claim.

### III. THRESHOLD ISSUES

Before analyzing Defendants' motions, the Court must resolve three issues, all of which concern what may be considered in evaluating those motions. First, in her Second Amended Complaint, Plaintiff seeks to incorporate the "claims and damages" from her earlier complaints, raising the question of whether the Court may consider the allegations contained in the Complaint and Amended Complaint in resolving Defendants' motions. Second, attached to the Second Amended Complaint is a copy of the ODR Hearing Officer's decision on Plaintiff's due process petition, which contains factual findings, raising the question of whether the Court may consider those findings in resolving the motions. Third, in her briefing in opposition to Defendants' motions, Plaintiff introduces new factual allegations, raising the question of whether

the Court may consider those allegations in resolving the motions.

Start with the incorporation issue. Federal Rule of Civil Procedure 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c). Defendants complain, however, that the incorporation is "confusing" because Plaintiff does not specify which portions of the earlier complaints she seeks to incorporate, instead stating generally that "[a]ll claims and damages for claims from original/initial complaint are the same and to be added to this amended complaint." As Defendants correctly note, "[c]ourts have historically been reluctant to allow an incorporation by reference if it fails to provide adequate notice of the incorporating party's claims, defenses, or factual allegation." *Cooper v. Nationwide Mut. Ins. Co.*, 2002 WL 31478874, at *5 (E.D. Pa. Nov. 7, 2002). At the same time, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelee v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted). Here, although Plaintiff's incorporation of the earlier pleadings was not the model of clarity, it nevertheless put Defendants on notice that they would be required to address the claims and allegations raised there. And, indeed, Defendants did address those earlier claims in their motions to dismiss, notwithstanding their protestations that the "obtus[ity]" of the incorporation made it impossible to do so. Accordingly, Plaintiff adequately incorporated the claims and allegations from her earlier pleadings—the Court will consider those allegations and address those claims in deciding Defendants' motions to dismiss.

The factual findings from the ODR Hearing Officer's report presents a trickier issue. Generally, in resolving a motion to dismiss a district court may consider "exhibits attached to the

4

complaint," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), "[a]nd if . . . exhibits

contradict . . . allegations in the complaint, the exhibits control," *Vorchheimer v. Philadelphian

Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018). But here, Plaintiff's suit is, at heart, a

challenge to the Hearing Officer's conclusions regarding Defendants' compliance with the IDEA

and Section 504, which includes a challenge to the factual findings upon which the ODR Hearing

Officer based those legal conclusions. Thus, to treat the Hearing Officer's factual findings as

true and determine whether those findings contradict Plaintiff's allegations would be to put the

cart before the horse: what weight to afford the hearing officer's factual findings is at the very

core of Plaintiff's claim. Thus, the Court will not consider the Hearing Officer's factual findings

in resolving Defendants' motions to dismiss.

Lastly, there is the issue of the new factual allegations contained in Plaintiff's briefing.

Here, the procedural flexibility afforded to *pro se* filings finds an end point. *Mala v. Crown Bay

Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) ("At the end of the day, [*pro se* litigants] cannot

flout procedural rules—they must abide by the same rules that apply to all other litigants."). "[I]t

is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)

(quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)). And,

while "a *pro se* complaint . . . must be held to less stringent standards than formal pleadings

drafted by lawyers," *Erickson*, 551 U.S. at 94, such leniency does not permit a *pro se* litigant to

"rely on new facts in submission in response to a motion to dismiss to defeat the motion," *Dade

v. Gaudenzia DRC, Inc.*, 2013 WL 3380592, at *2 (E.D. Pa. July 8, 2013). The Court will

therefore not consider the new factual allegations contained in Plaintiff's briefing in resolving

the motions to dismiss.

To summarize, in resolving Defendant's motions to dismiss, the Court will consider the claims and allegations contained not only in the Second Amended Complaint but also those in the Complaint and Amended Complaint. The Court will not, however, consider the factual findings of the Hearing Officer, nor the new allegations in Plaintiff's briefing.

## IV.    FACTS

Plaintiff resides in Pottstown, Pennsylvania and is the mother of D.H., a minor child identified as having special needs. Defendants are the Pottstown School District (the "District"), individual employees of the District—namely, Ryan Oxenford, the Principal of Barth Elementary School; Matthew Moyer, the Principal of Rupert Elementary School; Stephen Rodriguez, Superintendent of the District; as well as Kim Stillwell, Erin Jacobs, and Joseph Schroeder, other District employees (the "District Defendants")—and Bret Wade, the Principal of Cottage Seven Academy, a private school that contracted with the District to provide educational services to students with certain disabilities.

D.H. entered the District in 2013 as a first-grader at Barth Elementary School. Through his first year at Barth, D.H. had no behavioral issues. In the spring of 2014, Plaintiff moved and D.H. transferred to Rupert Elementary School, another school in the District. Soon after arriving at Rupert, D.H. "was assaulted and restrained by principal Moyer and others." The incident had a significant negative impact on D.H.'s behavior—the child began to display "PTSD like symptoms," ran away from school, and had violent outbursts. The behavior continued throughout the remainder of D.H.'s first-grade year and into the child's second-grade year at Rupert.

Although the timeline is murky, a series of events occurred after the incident with Moyer. Plaintiff reached out to District personal, seeking to have D.H. transferred out of Rupert and to

have Moyer investigated, but to no avail. Also during this time, though it is not entirely clear when, D.H. was identified as an individual with a disability for purposes of the IDEA. Additionally, at some point, Moyer called the police on Plaintiff, leading her to unilaterally remove D.H. from Rupert. Finally, in April 2015, following a meeting with Moyer and members of Rupert's special education team, D.H. was transferred back to Barth.

In the fall of 2015, D.H. began third grade at Barth, where the problematic behaviors continued, leading to several formal and informal suspensions from school. Then, at a meeting to discuss D.H.'s behavior in December 2015, Pam Bateson, the head of Barth's Special Education Department,[2] requested D.H. be sent to "an institution." Plaintiff refused, at which point Bateson "suggested that [D.H.] be put on medication for [the child's] behavior or [else D.H.] would be placed out of [the] district." Plaintiff, afraid of what she perceived to be an ultimatum, took D.H. to see a psychiatrist, who prescribed the child medication. For a few months, D.H.'s performance in school improved, but Plaintiff was upset with the medication's effect on D.H.'s personality and appetite. By the summer of 2015, D.H.'s "issues" at school returned, and, on the advice of another medical professional, Plaintiff took D.H. off the medication. When, at some point in 2016, Plaintiff informed school officials at Barth of her decision to take D.H. off medication, the school called the Office of Children and Youth Services ("CYS"), claiming Plaintiff was neglecting her child's medical needs. CYS found the claims unsubstantiated.

After the events of 2015 and 2016, Plaintiff's narrative then jumps to March 2017, when Barth prohibited D.H. from returning to school. On April 17, 2017, after contacting Oxenford and Rodriguez about D.H.'s suspensions without any success, Plaintiff filed a complaint with the Pennsylvania Department of Education's Bureau of Special Education ("the Bureau"). On June

---

[2] Bateson is not a named Defendant here.

1, 2017, the Bureau found in Plaintiff's favor, and, as a result, the District agreed to place D.H. in an approved private school—the Martin Luther School in Plymouth Meeting, Pennsylvania— and cover all tuition and transportation costs.

The parties agreed that D.H. would start at Martin Luther on October 23, 2017. However, due to the District's failure to complete certain paperwork on time, D.H. was unable to enroll at the school. Instead, the District arranged for D.H. to enroll at Cottage Seven Academy, another private school with which the District contracted, starting on October 24, 2017. On D.H.'s first day, Plaintiff claims Wade—the principal of Cottage Academy— inappropriately "restrain[ed]" D.H. Plaintiff sought to have D.H. transferred, but the District refused to do so and threatened to find D.H. truant if the child did not report to Cottage Academy. After the first day, D.H. continued to have behavioral issues at school, leading Wade to call the police on the child and CYS on Plaintiff. Again, CYS found the claims against Plaintiff unsubstantiated.

On January 3, 2018, Plaintiff filed another complaint with the Bureau. On May 11, 2018, the Hearing Officer issued his decision, denying Plaintiff's request for relief. Plaintiff filed this appeal to federal court along with other claims, and Defendants have now filed two motions to dismiss Plaintiff's Second Amended Complaint—one from the District Defendants, and one from Wade.

## V. DISCUSSION

The pleadings are not entirely clear as to what causes of actions Plaintiff purports to bring, against whom, and for what relief. Construed liberally,[3] the Court understands Plaintiff to

---

[3] Liberally, but not unreasonably. *See Mala*, 704 F.3d at 245 ("[*P*]*ro se* litigants still must allege sufficient facts in their complaints to support a claim."). For example, Plaintiff brings a claim for "neglect," but neglect is not a civil cause of action under Pennsylvania law. And the Court will not go so far as to transform Plaintiff's "neglect" claim into a negligence claim without some indication—such as factual allegations that Defendants breached a duty owed to Plaintiff or argumentation to that effect, none of which are present here—that Plaintiff intended to bring such a claim. *See Kirk v. Heppt*, 532 F. Supp.2d 586, 590 (S.D.N.Y. 2008) ("The duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.") (internal quotation marks and alterations omitted).

assert the following claims: (1) an appeal of the Hearing Officer's IDEA findings, pursuant to 20 U.S.C. § 1415(i)(2); (2) retaliation in violation of Section 504; (3) common law assault; (4) violation of the substantive protections of the Fourteenth Amendment's Due Process Clause, pursuant to 42 U.S.C. § 1983; (5) violation of the procedural protections of the Fourteenth Amendment's Due Process Clause, pursuant to 42 U.S.C. § 1983; (6) violation of the Fourteenth Amendment's Equal Protection Clause, pursuant to 42 U.S.C. § 1983; and (7) violation of the Privacy Act of 1974, pursuant to 5 U.S.C. § 552a. The Court also understands Plaintiff to assert all claim against all Defendants, and to seek both compensatory and punitive damages on all claims. Each claim will be addressed in turn.

## A. IDEA Claim

The IDEA provides federal funding to state special education programs on the condition that states provide a "free and appropriate education ('FAPE') . . . to all children with disabilities residing in the state." 20 U.S.C. §§ 1411, 1412(a)(1)(A). The "primary mechanism" for delivering a FAPE is through an Individualized Education Plan ("IEP") comprised of "a specific statement of a student's present abilities, goals for improvement, services designed to meet those goals, and a timetable for reaching the goals." 20 U.S.C. § 1414(b); *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010). Parents work with various specialized educators as part of an "IEP team" to create and implement a child's IEP. 20 U.S.C. § 1414(d)(4).

While "the core of the IDEA is the collaborative process" amongst an IEP team, the IDEA also sets out an adjudicative procedure for parents "who believe that an IEP fails to provide their child with a FAPE." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012).

---

Similarly, the Court understands Plaintiff's "claim" for "emotional distress" to be an attempt to recover damages for emotional stress, and not a claim for negligent infliction of emotional distress ("NIED") or intentional infliction of emotional distress ("IIED"). That is because Plaintiff does not allege facts consistent with an NIED or IIED claim, and the Amended Complaint labels both causes of actions and prayers for relief as "claims," *see supra* note 1.

Specifically, a parent is entitled to file a due process complaint and receive an "impartial due process hearing" in front of a state or local educational agency. 20 U.S.C. § 1415(f)(1). A parent "aggrieved by the findings and decision rendered" during the due process hearing may appeal that decision by filing a civil action in federal court. 20 U.S.C. § 1415(i); *cf. Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 533 (2007) (holding that "a parent may be a 'party aggrieved' for purposes of § 1415(i)(2)" and may bring actions *pro se* to enforce those rights).

Here, Plaintiff made a due process complaint against the District on January 3, 2018, and, after the Hearing Officer denied her request for relief, filed this appeal as permitted by Section 1415(i)(2). Defendants move to dismiss the appeal, on the ground that Plaintiff has failed to allege sufficient facts to make out a viable challenge to the Hearing Officer's findings.

Defendants' motions are premature because a motion to dismiss is not the appropriate procedural mechanism to challenge a Plaintiff's IDEA appeal. *See, e.g.*, *J.L. ex rel. J.L. v. Ambridge Area Sch. Dist.,* 622 F. Supp.2d 257, 266 (W.D. Pa. 2008) ("[I]t would be improper for this Court to grant a motion to dismiss as to the Plaintiffs' claims without conducting a thorough review of the administrative record and not only a review of the Hearing Officer and Appeals Panel decisions attached to the complaint."); *Burke v. Brookline Sch. Dist.,* 2007 WL 2669717 at *2 (N.H. Sept. 6, 2007) (noting that "since this is an appeal from an administrative decision under IDEA," "the assertion upon which the School District moves to dismiss plaintiffs' complaint is one that cannot be assessed in the context of a motion to dismiss"). Rather, such appeals are typically evaluated on a motion for Judgment on the Administrative Record, *see, e.g.*, *Jack J. through Jennifer S. v. Coatesville Area Sch. Dist.*, 2018 WL 3397552, at *1 (E.D. Pa. July 12, 2018) (Baylson, J.) or a motion for summary judgment, *see, e.g.*, *Lebron v. N. Penn Sch.*

*Dist.*, 769 F. Supp.2d 788, 793 (E.D. Pa. 2011) (Brody, J.).

That is because of the "nontraditional standard of review" district courts employ "in deciding cases under the IDEA, . . . sometimes referred to as 'modified *de novo*' review." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). Under this standard, a district court must "give due weight and deference to the findings in the administrative record," treat "factual findings from the administrative proceedings [as] prima facie correct," *id.* (internal quotation marks and citations omitted), and "accept the state agency's credibility determinations unless the non-testimonial evidence in the record would justify a contrary conclusion," *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). Thus, a motion to dismiss is simply not the right time, nor the right vehicle to challenge the merits of an IDEA appeal because the administrative record is not properly before a district court—modified *de novo* review requires "a thorough review of the administrative record," and "not only a review of [a] Hearing Officer . . . decision[] attached to [a] complaint." *J.L. ex rel. J.L.*, 622 F. Supp.2d at 266; *see id.* (finding it "improper" to grant a motion to dismiss a plaintiff's IDEA claims). Defendants' motions to dismiss Plaintiff's Section 1415(i)(2) appeal will be denied, accordingly.

That said, Plaintiff's IDEA claims sweep more broadly than permitted by Section 1415(i)(2). Plaintiff seeks to bring IDEA claims against the individual Defendants, but the statute does not impose liability on individuals. *See Taylor v. Altoona Area Sch. Dist.,* 513 F. Supp.2d 540, 553 (W.D. Pa. 2007) ("The United States Court of Appeals for the Third Circuit has recognized that Congress does not normally seek to impose liability on individuals when it places conditions on the receipt of federal funds by entities that employ such individuals . . . [which] counsels against a determination that individuals can be held liable for IDEA violations.") (citing *Emerson v. Thiel Coll.,* 296 F.3d 184, 190 (3d Cir. 2002)); *P.N. v. Greco*,

282 F. Supp.2d 221, 238 (D.N.J. 2003) ("[N]o provision of the IDEA or implementing regulations extends its obligations to individual actors[.]"); *Colon ex rel. Disen-Colon v. Colonial Intermediate Unit 20*, 443 F. Supp.2d 659, 669 (M.D. Pa. 2006) ("Liability under the IDEA does not extend to individual actors"). In addition, Plaintiff seeks to recover both compensatory and punitive damages on her IDEA claims, but "compensatory and punitive damages are not an available remedy under the IDEA." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 186 (3d Cir. 2009). Thus, Plaintiff's IDEA claims against the individual Defendants will be dismissed with prejudice, as will her IDEA claim against the District to the degree that she seeks compensatory and punitive damages.

## B. Section 504 Retaliation

Section 504 proscribes discrimination on the basis of an individual's disability status: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). And Section 504's implementing regulations protect individuals exerting their rights under the statute against retaliation: "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purposes of interfering with any right or privilege secured by [Section 504], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 34 C.F.R. § 100.7(e).

The Third Circuit has held that the elements of a retaliation claim under Section 504 "are the same" as a "claim under 42 U.S.C. § 1983 predicated on the First Amendment." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Thus, to make out a viable

Section 504 retaliation claim a plaintiff must show that (1) she engaged in protected activity, (2) a defendant's retaliatory action was sufficient to deter a person of ordinary firmness from exercising her rights, and (3) that there was a causal connection between the protected activity and the retaliatory act. *Id.* But, like IDEA claims, Section 504 claims may not be brought against individuals, *see A.W. v. Jersey City Public Schs.,* 486 F.3d 791, 804 (3d Cir. 2007), and cannot support recovery of punitive damages, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

Accordingly, here, Plaintiff's Section 504 claims against the individual Defendants will be dismissed with prejudice, as will her prayer for punitive damages. But, the pleadings contain sufficient factual allegations to make out a viable retaliation claim against the one remaining Defendant—the District.

First, Plaintiff engaged in protected activity by making complaints to school and District officials about D.H.'s treatment at school—specifically, about the incidents in which Moyer and Wade restrained D.H, and about what Plaintiff perceived to be an ultimatum concerning D.H.'s medication. *See* 34 C.F.R. § 100.7(e) (protecting parties that "made a complaint" about discriminatory conduct); *Herring v. Chichester Sch. Dist.*, 2008 WL 436910, at *6 (E.D. Pa. Feb. 14, 2008) (holding that making complaints about treatment of special education students constitutes protected activity).

Second, on at least two occasions, Plaintiff plausibly suffered retaliatory action when school officials put in unsubstantiated calls to CYS: once, in 2016, when school officials called CYS after Plaintiff informed them that she had taken D.H. off medication; and then again in 2017, when Wade called CYS after Plaintiff complained to District officials about Wade impermissibly restraining D.H. *See Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 589 (6th Cir. 2008) (noting that "making a false report to Children Services" constitutes retaliatory

action); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002) (finding that "instituting child welfare investigations" sufficed as "allegations of retaliatory conduct") (internal punctuation omitted). And in both cases, Plaintiff alleges that the complaints were false, as CYS found them unsubstantiated.

Third, the pleadings contain sufficient allegations from which the Court can reasonably infer that the unsubstantiated calls were made to CYS with retaliatory animus. Although the timelines are not entirely clear, Plaintiff alleges that in both cases school officials placed calls to CYS soon after she complained about D.H.'s treatment at school: in 2016, after Plaintiff complained about what she perceived to be Bateson's ultimatum regarding D.H.'s medication; and, in 2017, after Plaintiff complained about Wade's improper restraint of D.H. *See Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005) ("[T]emporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn."). That CYS found the complaints unsubstantiated further supports the inference that the complaints were motivated by retaliatory animus. *Cf. Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (noting that a causal connection may be inferred from "inconsistencies in the reasons . . . give[n] for . . . adverse action"). "Although [the] complaint is not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims," *Fowler*, F.3d at 211-12—a standard Plaintiff has met here.[4] Accordingly, the District's motion to dismiss Plaintiff's Section 504 claim will be denied in relevant part.

## C. Assault

Under Pennsylvania law, assaultive conduct is behavior that "clearly evokes a reasonable

---

[4] There may be other infirmities in Plaintiff's retaliation claim—for example, there is a question as to whether the District can be held liable for action purportedly taken by Wade, a private contractor—but Defendants do not raise those arguments here. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ("[U]nder Rule 12(b)(6), the defendant has the burden of showing no claim has been stated.").

apprehension of bodily harm in the person assaulted." *Jackson v. Pa. Bd. of Prob. & Parole*, 885 A.2d 598, 601 (Pa. Commw. 2005) (internal quotation marks and alterations omitted); *see also Dunkleberger v. Pa. Bd. of Prob. & Parole*, 573 A.2d 1173, 1174 (Pa. Commw. 1990) (explaining that assault is "a willful offer with force or violence to do hurt to another.").[5]

Here, there are no allegations that any of the Defendants engaged in assaultive behavior toward Plaintiff. To the degree that Plaintiff seeks to recover for assaultive conduct purportedly directed towards D.H., those claims fail because Plaintiff, as a *pro se* litigant, may not pursue claims on behalf of anyone other than herself. *See Osei-Afriyie*, 937 F.2d at 882-83. Defendants motion to dismiss Plaintiff's assault claims will be granted accordingly.

### D. Section 1983 Claims

Section 1983 provides a cause of action for violations of federal law by state officials. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Third Circuit has explained, however, that Section 1983 is not available to provide a remedy for alleged violations of rights secured by the IDEA and Section 504, given the robust remedial schemes created by Congress in those statutes. *A.W.,* 486 F.3d at 806.

Here, again though not entirely clear,[6] Plaintiff appears to assert three separate Section 1983 claims premised on the violation of three separate constitutional rights: (1) violation of the

---

[5] Where, as here, a federal court is interpreting Pennsylvania law, the federal court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, a federal court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

[6] Plaintiff brings a claim generally for "Violation [of] Fourteenth Amendment Due Process," without specifying whether the claim sounds in the procedural or substantive protections. Further, Plaintiff asserts claims for "civil rights discrimination" and "civil action for deprivation of rights," which the Court understands to reflect an Equal Protection Clause claim.

substantive protections of the Fourteenth Amendment's Due Process Clause, (2) violation of the procedural protections of the Fourteenth Amendment's Due Process Clause, and (3) violation of the Fourteenth Amendment's Equal Protection Clause.

### 1. Substantive Due Process

Substantive due process protects individuals "against arbitrary action" so "egregious" that the "official conduct can be said to be arbitrary in the constitutional sense." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 399 (3d Cir. 2003) (internal quotation marks omitted). That protection extends to "certain narrowly defined fundamental rights of parents in their relationships with their children," the essence of which is "the right of parents to make decisions concerning the rearing of their children." *McCurdy v. Dodd*, 352 F.3d 820, 826 (3d Cir. 2003). But, "the Due Process Clause does not condemn every conceivable state action that affects a fundamental right in any way," *id.* at 827; rather, it applies only to "deliberate decisions of government officials," *Daniel v. Williams*, 474 U.S. 327, 331 (1986). *See also id.* at 327 ("[The] Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."). Accordingly, "[i]n the context of parental liberty interests, this limitation means that the Due Process Clause only protects against deliberate violations of a parent's fundamental rights—that is, where the state action at issue was specifically aimed at interfering with protected aspects of the parent-child relationship." *McCurdy*, 352 F.3d at 827-28; *Chambers*, 587 F.3d at 192 (upholding dismissal of parents' substantive due process claim where the parents "failed to allege . . . that the School District deliberately sought to harm their relationship with [the parents' special needs child]").

Here, Plaintiff's substantive due process claim fails because there are no allegations that any of the Defendants "specifically aimed at interfering with" Plaintiff's relationship with D.H.

Instead, the pleadings detail Plaintiff's running dispute with school and District officials over the handling of D.H.'s education—allegations, which at most, amount to claims that the District violated the strictures of the IDEA and Section 504 by failing to provide D.H. with a FAPE. But, an IDEA or Section 504 violation does not support a Section 1983 claim. *A.W.,* 486 F.3d at 806. And there are no allegations that support the plausible inference that any of the Defendants deliberately "sought to harm [Plaintiff's] relationship with D.H." *McCurdy*, 352 F.3d at 827-28.[7] Because the pleadings do not contain factual allegations showing "deliberate decisions of government officials," *Daniel*, 474 U.S. at 331, Plaintiff has failed to make out a viable substantive due process claim, and Defendants' motions to dismiss will be granted.

## 2. Procedural Due Process

Due process has "a procedural component as well." *McGurdy*, 352 F.3d at 827. To make out "a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to h[er] did not provide due process of law." *Chambers*, 587 F.3d at 194 (internal quotation marks omitted). Thus, in evaluating a procedural due process claim, courts must "first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." *Baraka v. McGreeveyi*, 481 F.3d 187, 205 (3d Cir. 2007).

In *Chambers*, the Third Circuit assumed, without deciding, that the provision of Pennsylvania state law that set forth the procedural framework for IDEA due process hearings

---

[7] The allegation that Bateson "suggested that [D.H.] be put on medication for [the child's] behavior or [else D.H.] would be placed out of district," also does not support a Section 1983 claim. Even if Bateson's suggestion amounted to a deliberate violations of Plaintiff's fundamental rights, Bateson is not a named Defendant here, and so Plaintiff cannot maintain a Section 1983 claim against her. Further, the allegation does not support a Section 1983 claim against the District—Bateson's employer—because there are not sufficient factual allegations from which the Court can conclude that Bateson was "a decisionmaker possessing final authority to establish . . . policy" and that the suggestion amounted to "an official proclamation, policy, or edict," of the District. *Kniepp v. Tedder*, 95 F.3d 119, 1212 (3d Cir. 1996).

vested the parents of a special-needs child with a protected property interests, and that a school district's violation of that procedural framework constituted a deprivation of the parents' interest. 587 F.3d at 196-7 (discussing 22 Pa. Code § 14.162). The court of appeals nevertheless found the parents' claim "fatally flawed" because "a plaintiff who wishes to sustain a § 1983 claim based upon a violation of procedural due process must, at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process," and that, there, the "School District's error . . . was negligent at most." *Id.* (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994)).

Here, Plaintiff's procedural due process claim is similarly flawed. Plaintiff has not identified the property or liberty interest that she claims to have been deprived of by Defendants. Even assuming, as the Third Circuit did in *Chambers*, that the procedural safeguards of the IDEA vest parents such as Plaintiff with a protected property interest, the pleadings contain no factual allegations specifying how the Defendants violated those procedural safeguards—that is, Plaintiff fails to identify a procedural violation that deprived her of a protected property interest. Moreover, the pleadings' sparse allegations do not support a claim that Defendants acted with the requisite intent to deprive Plaintiff of procedural protections to support a due process claim. Defendants' motions to dismiss the claim will therefore be granted.

### 3. Equal Protection Clause

The purpose of the Equal Protection Clause of the Fourteenth Amendment is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). Typically, "to

establish a prima facie case of discrimination under the Equal Protection Clause," a plaintiff must allege "that they were members of a protected class and that they received different treatment than that received by other similarly-situated individual." *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002) (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). But, a plaintiff may also make out a viable claim under a "class of one" theory, "alleging that the litigants itself, and not a particular group, was the subject of discriminatory treatment." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 114 (3d Cir. 2013). "[T]o state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Plaintiff does not allege that she was a member of a protected class; instead, Plaintiff's Equal Protection Clause claim is premised on a "class of one" theory. Plaintiff's claim fails, however, on the first prong—the pleadings do not contain factual allegations sufficient to make plausible the existences of similarly situated parties. "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). Here, Plaintiff's "claim must fail because [s]he does not allege the existence of similarly situated individuals . . . who [Defendants] treated differently than [they] treated [Plaintiff]." *Hill*, 455 F.3d at 239. Indeed, the pleadings do not contain allegations about Defendants' treatment of any other students with disabilities. *See Aichele*, 705 F.3d at 115 (dismissing newspaper's Equal Protection Clause claim where "the Complaint fail[ed] to present a single example where another newspaper" received a benefit that plaintiff did not). Thus,

Plaintiff fails to state a viable Equal Protection Clause claim, and Defendants' motions to dismiss those claims will be granted.

### E. Privacy Act

"'[I]n order to protect the privacy of individuals identified in information systems maintained by Federal agencies,'" the Privacy Act "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896) (alteration in original). Specifically, Section 552a(g)(1)(D) provides a private cause of action against "any agency" that "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse affect on an individual." 5 U.S.C. § 552a(g)(1)(D). "Importantly, however, there is no private cause of action under the Privacy Act against a municipal or state agency." *N'Jai v. Pittsburgh Bd. of Pub. Educ.*, 487 F. App'x 735, 737 (3d Cir. 2012) (citing *Pennyfeather v. Tessler,* 431 F.3d 54, 56 (2d Cir. 2005)); *see also Schmitt v. City of Detroit,* 395 F.3d 327, 329-31 (6th Cir. 2005) (holding Privacy Act applies exclusively to federal agencies); *Unt v. Aerospace Corp.,* 765 F.2d 1440, 1447 (9th Cir. 1985) (same); *Polchowski v. Gorris,* 714 F.2d 749, 752 (7th Cir. 1983) (same). Here, none of the Defendants are federal agencies, and Plaintiff's Privacy Act claim will therefore be dismissed with prejudice.[8]

\* \* \*

---

[8] In her response to Defendants' motions to dismiss, Plaintiff repurposes her Privacy Act claims as a false light tort claim. The Court will not address the viability of Plaintiff's false light claim, however, because it is premised on factual allegations contained only in her response, and, as discussed, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Zimmerman*, 836 F.2d at 181.

In sum, Plaintiff's IDEA appeal and Section 504 retaliation claim against the District survive. Plaintiff's IDEA and Section 504 claims against the individual Defendants will be dismissed with prejudice, as will her prayer for compensatory and punitive damages on her IDEA claims and her prayer for punitive damages on her Section 504 claims. Plaintiff's common law and constitutional claims will be dismissed in their entirety. Finally, Plaintiff's Privacy Act claim will be dismissed against all Defendants with prejudice.

An appropriate order follows.

**July 11, 2019**                                        **BY THE COURT:**


**/S/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**